**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAMIKA GRIFFITH-JOHNSON,** | : | |
| **Administratrix of the Estate of JAMES** | : | |
| **WESLEY ANDERSON, Deceased,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **No. 23-1633** |
| **v.** | : | |
| | : | |
| **PROMEDICA SENIOR CARE** | : | |
| **OF PHILADELPHIA, PA, LLC** | : | |
| **d/b/a PROMEDICA TOTAL** | : | |
| **REHAB+, et al.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**Schiller, J.**                                                   **September 12, 2023**

Plaintiff Tamika Griffith-Johnson, Administratix of James Wesley Anderson's Estate ("the

Estate") alleges Anderson died of septicemia because Defendants[1] negligently treated his wound.

Defendants move to dismiss the Estate's Complaint, arguing it fails to set forth a claim against any

entity other than Defendant ProMedica Senior Care of Philadelphia PA, LLC d/b/a ProMedica

Total Rehab+ ("Total Rehab+") and that it otherwise fails to state a claim against Total Rehab+

under Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot., ECF 6.) They also move to strike

certain allegations under Rule 12(f)(2). (*See* Defs.' Mem., ECF 6-2 at 15-16.) For the reasons that

---

[1]      Relevant to this Opinion, "Defendants" are ProMedica Senior Care of Philadelphia PA, LLC d/b/a ProMedica Total Rehab+ ("Total Rehab+"); HCR II Healthcare, LLC; HCR III Healthcare, LLC; HCR IV Healthcare, LLC; HCR Healthcare, LLC; HCR ManorCare, Inc.; HCR ManorCare Services, LLC; Heartland Employment Services, LLC; Heartland Rehabilitation Services, LLC; ManorCare of Delaware County, LLC; and ProMedica Health Systems, Inc. The Estate's claims against Defendants Mercy Catholic Medical Center of Southeastern Pennsylvania, Trinity Health of the Mid-Atlantic Region, Trinity Health Corporation, and Mercy Management of Southeastern Pennsylvania were dismissed without prejudice on May 31. (ECF 12.) Fictitious Defendants John Doe 1-4 remain unserved.

follow, the Court grants Defendants' Motion in part and denies it in part. The Estate's claims against the Non-Operator Defendants,[2] its claims based on vicarious liability, its punitive damages claims, and its vague allegations of fraud are dismissed with leave to amend. Its breach of fiduciary duty claim against Total Rehab+ may proceed. The Complaint's references to citations issued for alleged deficiencies occurring after Anderson's death are stricken with leave to replead if appropriate.

## I.    **BACKGROUND**

The Estate alleges each of the Defendants were "engaged in the business of owning, operating, managing and offering healthcare, medical services, nursing care and long-term care, to the public at a nursing home facility, ProMedica Total Rehab+ ('Pro Medica') located at 1526, Lombard Street, Philadelphia, Pennsylvania." (Compl. ECF 1-3, ¶¶ 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25.) In December 2021, following a "lengthy admission," Mercy Fitzgerald Hospital discharged Anderson to ProMedica with a "left buttock/sacrum wound" and other diagnoses including congestive heart failure, muscle weakness, and difficulty in walking. (Compl., ECF 1-3 ¶¶ 50-52). Anderson's wound deteriorated while at ProMedica and he was transferred to Thomas Jefferson University Hospital's Emergency Department on March 3, 2022. (*Id.* ¶¶ 53, 58-72). Jefferson ultimately discharged Anderson to a rehabilitation facility with a diagnosis of sepsis and sacral osteomyelitis on March 31, 2022. (*Id.* ¶¶ 77-78). By early May 2022, Anderson was again

---

[2]    "Non-Operator Defendants" refers to all non-dismissed Defendants that are not Total Rehab+ or the unserved John Doe Defendants.

Because the Estate's Memorandum concedes that Total Rehab+ "can be directly liable to Plaintiff" (ECF 6-2 at 5), the Court construes its Motion as requesting total dismissal of the Complaint against the Non-Operator Defendants and only partial relief for Total Rehab+. (*But see* ECF 6-2 at 19 (asking the Court to dismiss Plaintiff's entire Complaint with prejudice).)

transferred, this time to Penn Presbyterian Hospital, and then admitted to inpatient hospice. (*Id.* ¶¶ 79-80). He died on June 6, 2022, from "unspecified septicemia," which the Estate alleges was the result of negligence in treating his sacral wound and other medical conditions. (*Id.* ¶¶ 81-84).

The Estate broadly alleges each Defendant is liable for Anderson's death because each "acted or failed to act by and through its agents, ostensible agents, servants, workmen, nurse's aides, and/or employees, physicians, the nursing home administrator and/or administrators responsible for formulating, adopting, monitoring and enforcing the policies, procedures and protocols of ProMedica . . . ." (*Id.* at ¶ 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26.) It contends, *inter alia*, that "Defendants, directly and/or through their respective agents, servants and/or employees, accepted the responsibility for" Anderson's care,

> and in so doing, undertook and/or assumed a duty to [Anderson] to provide a safe nursing home facility necessary for the proper practice of medicine at said nursing home facility and to render, reasonable competent, proper, adequate and appropriate medical care, skilled nursing home facility care, custodial care, nursing home services and treatment and, to take appropriate preventative and curative measures as well as adequately supervise, monitor and provide timely treatment and services to [Anderson], and avoid and prevent harm to him.

(*Id.* at ¶ 31.)

The Estate commenced this action by filing a Writ of Summons in the Philadelphia County Court of Common Pleas in December 2022 and filed a Complaint there in March 2023. (*See* ECF 1, ¶¶ 1, 6.) Its 208-paragraph Complaint asserts claims against Defendants for negligence, vicarious liability, corporate liability, survival, and wrongful death. (ECF 1-3 at ¶¶ 179-208 (Counts I-V).) The Estate also asserts claims against TotalRehab+ for breach of fiduciary duty (*id.* at ¶¶ 179-198 (Count VI)) and against its co-Defendants for "aiding and abetting in breach of fiduciary duties." (*Id.* at ¶¶ 199-208 (Count VII).) After the case was removed to this Court in May 2023 (ECF 1), Defendants moved to dismiss the Estate's Complaint. (ECF 6). The Estate then

moved to remand the case to state court. (ECF 7.) The Court denied that motion on May 31, 2023, because the parties are completely diverse and the amount in controversy exceeds $75,000. (ECF 12-13). The Estate responded to Defendant's Motion to Dismiss on June 16. (ECF 14.) The Court now considers whether to dismiss the Estate's claims or to strike any of the Complaint's allegations.

## II.   DISCUSSION

### A.   MOTION TO DISMISS UNDER RULE 12(b)(6).

To proceed in federal court, the Estate's claims must be sufficiently pled under the Federal Rules of Civil Procedure.[3] Although the Estate contends it has sufficiently pled each of its claims, its Response to Defendants' Motion cites an outdated standard of review for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). (*See* Pl.'s Resp., ECF 14 at ECF p. 6-7.) It contends, incorrectly, that "a motion to dismiss under 12(b)(6) should be granted only 'if it appears *to a certainty* that no relief could be granted *under any set of facts* which *could* be proved." (*Id.* at ECF p. 7 (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (emphasis added).); *see also* ECF 14 at ECF p. 2.) *Taliaferro* relies on the "no set of facts" language the Supreme Court applied in *Conley v. Gibson*, 355 U.S. 41, 78 (1975). But the Supreme Court "disavowed" this test in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* made "clear that the 'no set of facts' language may no longer be used as part of the Rule 12(b)(6) standard."[4] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 550

---

[3]    Said otherwise, whether an allegation is sufficient to survive a demurrer in the Court of Common Pleas has no bearing on whether the Estate's Complaint can withstand dismissal in this forum. (*Cf.*, ECF 14 at ECF p. 15.)

[4]    The Court is troubled by the Estate's failure to even mention the Supreme Court's long-controlling precedents in *Twombly* or *Iqbal* or, for that matter, any subsequent decision refining the pleading standard set forth in Federal Rule of Civil Procedure 8.

U.S. at 563). "*Conley* described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 550 U.S. at 563. It is no longer enough "to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Phillips*, 515 F.3d at 233 (quoting *Twombly*, 550 U.S. at 563 n.8).

The applicable standard of review is central to the Court's decision. To satisfy Rule 12(b)(6), the Estate's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Id*. at 678. While "[t]he plausibility standard is not akin to a probability requirement," it requires a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotations omitted) A pleading that merely "tenders naked assertion[s] devoid of further factual enhancement is insufficient." *Id.* (citation and internal quotations omitted). Said otherwise, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the Complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The Court "disregard[s] threadbare

recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).

Ultimately, to proceed with its claims in this forum and withstand Defendants' Motion, the Estate must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [its] claims." *Connelly*, 809 F.3d at 789.

> **1.     The Estate's Allegations Against the Non-Operator Defendants Are Insufficiently Specific.**

Defendants move to dismiss the Estate's direct liability claims against any entities other than Total Rehab+ with prejudice because, they maintain, "only a licensed operator of a nursing home facility may be directly liable for negligence." (ECF 6-2 (*citing Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 622 (Pa. Super. Ct. 2017).) They argue the Estate fails to plead any basis for the Non-Operator Defendants' direct liability for negligence because it "relies on conclusory, boilerplate allegations." (ECF 6-2 at 8.) They appropriately object to the Estate's repeated use of "the all-encompassing word 'Defendants'" in describing "various actions or inactions . . . making it difficult, if not impossible, for Defendants to determine which entity, if any, is purportedly responsible for negligence." (ECF 6-2 at 7.) They also contend the Estate "has failed to plead a single fact establishing that any Non-Operator Defendan[t] is directly liable to [it]." (*Id.*)

The Estate responds that its Complaint pleads "sufficient facts to render all named Defendants liable under [a] corporate liability theory . . . ." (ECF 14 at ECF p. 9.) In the Estate's view, its Complaint includes "multiple averments regarding Defendants' duties to [Anderson] to maintain a safe and adequate facility and to hire and oversee competent staff in providing care, goods, and services to their residents, including [Anderson], as well as to adopt and enforce

adequate rules and policies to ensure quality care." (*Id.*) It contends the Complaint "sets forth the multitude of ways Defendants Breached their duties to" Anderson. (*Id.* at 10.) The Estate contends that when its Complaint "is read in its entirety, there can be no doubt" that it states a claim for direct liability against all Defendants. (*Id.* ECF p. 11.)

The Estate explains, correctly, that a nursing home and affiliated entities may be "subject to potential direct liability for negligence[ ] where the requisite resident-entity relationship exists to establish that the entity owes the resident a duty of care . . . ." *Scampone v. Highland Park Care Ctr.*, 57 A.3d 582, 584 (Pa. 2012). However, that does not mean its Complaint pleads sufficient *facts* to state such a claim against the Defendants. Read in its entirety, the Estate's Complaint contains only generalized allegations that all Non-Operator Defendants—that is, none of them in particular—are responsible for the purportedly substandard conditions at ProMedica. It broadly alleges the Non-Operator Defendants "exercised control over" the "budgeting, marketing, human resource management, training, staffing . . . [and] policy and procedure manuals used by ProMedica Total Rehab+" as well as its "reimbursement, quality care assessment and compliance, licensure, certification and all financial, tax, and accounting issues," and further claims that Non-Operator Defendants "monitor[ed] the care being provided." (ECF 1-3 ¶¶ 92-94.) It also broadly alleges "Defendants reduced staffing levels below the level necessary to provide adequate and timely care and services to their patients," and "intentionally increased the number of sick and frail residents with greater health problems requiring more complex care." (*Id.* ¶¶ 101, 103.) Nowhere in these allegations are there any specific facts.

More is required to state a direct liability claim against any Defendant based on a theory of corporate liability. The Complaint includes only boilerplate allegations as to this point. It is devoid of any facts that might suffice to show whether "the requisite resident-entity relationship exist[ed]"

between Anderson and any Defendant. *Scampone v. Highland Park*, 57 A.3d at 584. "Even under the most liberal notice pleading requirements . . . a plaintiff must differentiate between defendants," and "[a]n allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim." *Binder v. Weststar Mortg.*, No. 14-7073, 2016 WL 3762710, at *3 (E.D. Pa. Jul. 13, 2016) (citations omitted); *see also United States ex rel. Ellis v. CVS Health Corp.*, No. 16-1582, 2023 WL 3204015, at *3 (E.D. Pa. May 2, 2023) ("[E]ven when 'corporate . . . defendants are in a better position to know the extent of each defendant's participation in the complained of conduct,' all defendants still must be 'given sufficient notice of their respective roles in order that they may answer the complaint.'") (quoting *P & P Mktg., Inc. v. Ditton*, 746 F. Supp. 1354, 1362 (N.D. Ill. 1990)). To provide Defendants with sufficient notice of their alleged misconduct, the Estate must do more than simply lump them all together. Defendants' Motion is granted without prejudice[5] to the extent that it seeks to dismiss the Estate's claims against the Non-Operator Defendants insofar as those claims are based on the doctrine of corporate negligence.[6]

---

[5]    Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend a complaint] when justice so requires," which "certainly includes amendment to cure defective allegations." *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019); *see also Phillips*, 515 F.3d at 245 (holding that a district court considering a 12(b)(6) motion "must permit a curative amendment unless such an amendment would be inequitable or futile") (citation omitted).

[6]    As a result, the Court does not reach Defendants' arguments about whether the Estate can allege claims for direct liability against entities other than Total Rehab+ under the state court's *Scampone* decisions. (*See* ECF 6-2 at 5-8.) Any attempt to replead direct liability claims in an Amended Complaint should recognize that two corporate entities "cannot have direct corporate liability for performance of the same non-delegable duty" under Pennsylvania law. *Scampone v. Grane*, 169 A.2d at 622.

2.      **The Estate's Allegations Regarding the Alleged Actions or Inactions of Unidentified Physicians Do Not Suffice to State a Claim Based on Vicarious Liability.**

Defendants move to dismiss the Estate's claims that they are "vicariously liable for the actions of unnamed and unidentified physicians."[7] (Defs.' Reply, ECF 17 at ECF p. 4.) They argue the Estate cannot assert claims based on "the actions and inactions of licensed medical professionals" because "a skilled nursing facility is not liable for the actions of an independent physician" under Pennsylvania law and the Estate makes no "attempt to allege which specific physicians are [their] purported agents." (ECF 6-2 at ECF p. 8-9.) The Estate responds that it need "not specifically name their individual employees and/or personnel" and contends it may appropriately "refer to unnamed agents by using terms such as 'staff'" in its Complaint. (ECF 14 at ECF p. 11.)

The Estate supports its argument by reference to a series of Pennsylvania court decisions. (*See id.* at ECF p. 11-13.) However, *Breslin v. Mountain View Nursing Home, Inc.*, 171 A.3d 818 (Pa. Super. Ct. 2017), *Estate of Denmark ex rel Hurst v. Williams*, 117 A.3d 300 (Pa. Super. Ct. 2015) and *Sokolosky v. Eidelman*, 93 A.3d 858 (Pa. Super. Ct. 2014) are all procedurally inapposite. None addressed whether a plaintiff had alleged sufficient facts to state a vicarious liability claim under Rule 12(b)(6). *Breslin* considered, *inter alia*, whether a Pennsylvania trial court erred when it sustained the defendant's preliminary objection to the plaintiff's vicarious liability claim. 171 A.3d at 827-29 (holding that, in state court, the plaintiff's broad references to "nurses, physicians, resident physicians, fellows, attending physicians, therapists, agents, servants, workers, employees, contractors, subcontractors, and/or staff" were not lacking in sufficient

---

[7]      Total Rehab+ does not challenge "that it may be vicariously liable for the actions of its nursing staff acting within the course and scope of their employment." (Defs.' Reply, ECF 17 at ECF p. 4.)

specificity, and pled a cause of action against [the defendant] for vicarious liability"). *Estate of Denmark* considered whether a plaintiff's references to "nursing staff, attending physicians and other attending personnel" and "agents, servants, or employees" were sufficiently specific to withstand the defendant's preliminary objection in state court, which argued that the plaintiff failed to plead a cause of action based on vicarious liability. 117 A.3d at 306-307. And *Sokolosky* held that a state trial court had erred as a matter of law when it held, *on summary judgment*, that the plaintiff was "required to make a threshold showing that a specific medical practitioner owed a certain duty to her in order to establish her vicarious liability claim" against the defendants. 93 A.3d at 866. *Breslin*, *Estate of Denmark*, and *Sokolosky* shed no light on whether the Estate has pled sufficient facts to show—consistent with *Twombly* and *Iqbal*—that any Defendant had an agency relationship with any unnamed physician or other licensed medical professional.

Under Pennsylvania law, employers *may* be vicariously liable for negligent acts of their employees which cause injuries to third parties "provided that such acts were committed during the course of and within the scope of the[ir] employment." *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998) (citation omitted). But to withstand dismissal under the Federal Rules, the Estate "must plead enough facts from which a plausible claim of an agency relationship can be inferred . . . not simply assert in conclusory terms that a party is another party's agent." *Emmes Co., LLC v. SAP Am., Inc.*, No. 21-19, 2021 WL 1696304, at *5 (E.D. Pa. Apr. 29, 2021). Here too the Estate's Complaint includes only boilerplate and conclusory allegations about the alleged "agency relationships" between Defendants and their unnamed employees and their alleged duties to Anderson. (*See, e.g.*, ECF 1-3 at ¶¶ 31-33, 87, 109, 119-20, 125, 142-148.) More is required to "nudge" the Estate's claims about the actions or inactions of unidentified medical professionals "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The Court dismisses the Estate's claims without prejudice to the extent that they rest on a theory of vicarious liability.

> **3.      The Estate States a Claim for Breach of Fiduciary Duty against Total Rehab+ but Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty against the Non-Operator Defendants.**

Defendants ask the Court to strike the Estate's claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty because the Complaint includes no facts to show ProMedica "owed, let alone breached a fiduciary duty to" Anderson. (ECF 6-2 at 11-14.) They also argue the Estate cannot recover damages for any alleged breach of fiduciary duty because it has not alleged "that any damages stemmed from the alleged breach, much less an economic loss which can be measured with any certainty." (*Id.* at 13.) The Estate responds that it has alleged enough facts to support the existence of a fiduciary relationship because it alleges, *inter alia,* that upon Anderson's admission to ProMedica, he "was incapable of independently providing for his own safety, health, welfare and well-being and justifiably relied on the facility to provide necessary care and services to attain and/or maintain his highest practicable physical, mental, and psychosocial well-being." (ECF 14 at ECF p. 16-17 (citing ECF 1-3 at ¶ 181).) It maintains it has "set forth in detail" how the facility breached "that special relationship of confidence and trust" by failing to provide "the care, services and supervision [Anderson] required, causing him to suffer serious, permanent and painful injuries . . . ." (ECF 14 at ECF p. 17.) The Estate contends its claim for aiding and abetting breach of fiduciary duty is supported by allegations showing the Non-Operator Defendants "oversaw, managed and controlled the Facility's acceptance of reimbursements from [its] residents, knowing the Facility's' inability to provide full value of the care and services [needed] to meet the needs and safety of [its] residents . . . ." (*Id.* at ECF p. 19.)

To state a claim for breach of fiduciary duty, the Estate must first allege sufficient facts to

"demonstrate that a fiduciary or confidential relationship existed . . . ." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 500 (3d Cir. 2013) (citing *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1119-22 (Pa. 2000)). "The general test for determining the existence of . . . a [fiduciary] relationship is whether it is clear that the parties did not deal on equal terms." *Frowen v. Blank*, 425 A.2d 412, 416 (Pa. 1981). "[N]o precise formula has been devised to ascertain the existence of a confidential relationship," but one exists "'whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest.'" *Belmont*, 708 F.3d at 500 (quoting *Silver v. Silver*, 219 A.2d 659, 662 (Pa. 1966)). The Pennsylvania Superior Court has explained that "mem[bers] of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is exacted; there is a duty of total care . . . ." *Alexander v. Knight*, 177 A.2d 142, 146 (Pa. Super. Ct. 1962). And at least one Pennsylvania trial court has held "that the relationship between a nursing home and its resident *can* be fiduciary in nature." *Zaborowski v. Hospitality Care Ctr. Of Hermitage, Inc.*, 60 Pa. D. & C. 4th 474, 488 (Pa. Ct. Comm. Pl. 2002) (emphasis added).

The Estate alleges "the facility, ProMedica Total Rehab+, was a fiduciary of James Wesley Anderson and it "owed a fiduciary duty to" him. (ECF 1-3 at ¶¶ 192-93.) It asserts that "[t]he facility breached its fiduciary duty and its fiduciary obligations, as well as violated its relationship of special trust and special confidence owed to [Anderson] by . . . engaging in the conduct set forth in detail in" its Complaint and by using the revenues derived from patients to benefit the facility's owners instead of to "maintain and/or attain the highest practicable physical, mental and psychosocial well-being of" Anderson and other patients. (*Id.* at ¶ 194.) Based on the Complaint's allegations, Anderson he had "impaired mobility" upon his arrival at ProMedica, required

"extensive assist[ance] with two+ persons for . . . bed mobility" and "locomotion," and needed ongoing medical care. (ECF 1-3 at ¶¶ 50-71.) The Estate's allegations about Total Rehab+'s actions suffice to inform Total Rehab+ of how it had any fiduciary obligation to Anderson and breached that duty. Although Defendants argue that the claim fails because the Estate has not shown "an economic loss which can be measured with certainty" (ECF 17 at 6), it would be premature to dismiss the claim on this basis at this stage of the litigation. Construing the entirety of the Complaint's allegations in the light most favorable to the Estate, its breach of fiduciary duty claim against Total Rehab+ is sufficient to survive Defendant's Motion to Dismiss.

As for the claim that the non-Operator Defendants aided and abetted any breach of fiduciary duty, to withstand dismissal, the Estate must allege facts to show: (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting the breach. *See Kroken v. Steinberg*, 825 A.2d 723, 732 (Pa. Cmwlth. Ct. 2003). The Estate alleges the Non-Operator Defendants aided and abetted the facility's breach of fiduciary duty by "knowingly participat[ing] in and provid[ing] substantial assistance and encouragement to the facility . . . ." (ECF 1-3 at ¶ 201.) Its broad allegations against "Defendants" (*see, e.g.*, *id.* ¶¶ 200-207) are unsupported by enough facts to raise a reasonable expectation that discovery will reveal evidence to support the aiding and abetting claim, and they amount to no more than a formulaic recitation of the elements of their claim. *See Twombly*, 550 U.S. at 555-56. The Court dismisses the aiding and abetting claim with leave to amend.

### 4.   The Estate's Punitive Damages Claims are Insufficiently Specific.

Defendants move to dismiss the Estate's punitive damages claims because the Complaint "does nothing more than request" them without alleging any facts "concerning Defendants'

motives, their reckless indifference to the rights of others, nor the commission of any wanton, willful or intentional act by Defendants." (ECF 17 at ECF p. 8.) They argue that the Estate has not alleged facts sufficient to show Total Rehab+ "had any knowledge of or 'allowed' any conduct of its agents which would justify the imposition of punitive damages" under Pennsylvania's Medical Care Availability and Reduction of Error Act ("MCARE") or otherwise. (ECF 6-2 at 18 (citing 40 P.S. § 1303.505(c)).) Plaintiff responds that it has alleged that Total Rehab+ knew or was aware of a multitude of deficiencies at ProMedica before and during Anderson's stay. (ECF 14 at ECF p. 27.) It also points to *Breslin* and the *Scampone* line of cases in state court, which are procedurally inapposite. (*Id.* at ECF p. 23-28.)

Just because punitive damages *may* be available for services rendered by a nursing home facility does not mean that the Estate has alleged sufficient facts to withstand dismissal under Rule 12(b)(6). Punitive damages "are an extreme remedy" available under Pennsylvania law "in only the most exceptional matters." *Keen v. C.R. Bard, Inc.*, 480 F. Supp. 3d 624 (E.D. Pa. 2020). They are appropriate for conduct that "goes beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured." *Hutchinson ex rel. Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005). The Estate's broad allegations lack enough factual specificity to demonstrate more than a "sheer possibility" that any Defendant's actions were sufficiently outrageous or reckless to warrant punitive damages. *Iqbal*, 556 U.S. at 678. The Court dismisses the Estate's punitive damages claims with leave to amend to the extent that it can allege facts sufficient to state a claim for the imposition of punitive damages.

### 5.   The Estate's Allegations Regarding Fraudulent Activity are Insufficiently Specific.

Defendants also ask the Court to dismiss the Estate's allegations of fraudulent activity or

strike the Complaint's "vague and unsupported allegations of fraudulent documentation in [Anderson's] chart," because the Estate does not identify any alleged fraudulent documents or make any factual allegations that are sufficiently particular to establish fraud or mistake consistent with the requirements of Federal Rule of Civil Procedure 9(b). (ECF 6-2 at 15.) The Estate responds that it is not pleading a fraud claim and that its allegations that Defendants made "false, fraudulent, inadequate and inconsistent notes in [Anderson's] chart" are intended to support its punitive damages claim. (ECF 14 at ECF p. 19 (quoting ECF 1-3 at ¶ 120(ss).)

Fraud may not be "the predicate act," but Rule 9(b)'s text still requires the Estate to satisfy Rule 9(b)'s heightened pleading standard. *Alejandro v. Freedom Mortg. Corp.*, 22-897, 2022 WL 3910496, at *4 (E.D. Pa. Aug. 30, 2022). Rule 9(b) states that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). So, if the Estate amends its Complaint to assert punitive damages claims, any supporting allegations regarding fraudulent conduct must allege the requisite "who, what, where, when, and how." *In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 469 (3d Cir. 2004). The Court dismisses the Estate's vague allegations of fraud with leave to amend.

### B.   MOTION TO STRIKE UNDER RULE 12(f).

Finally, Defendants move to strike "[i]mpertinent and scandalous matters related to the care of other residents, including department of health survey results after the dates of [Anderson's] residency." (ECF 6-2 at 15.) Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Content is impertinent when it does not pertain to the issues raised in the complaint." *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 615 (E.D. Pa. 2015) (citations omitted). Scandalous content "improperly casts a derogatory light on someone,

most typically on a party to the action." (*Id.*) (citation omitted). The Court "possesses considerable discretion in disposing of a motion to strike" although motions to strike are "disfavored." (*Id.*) (citations omitted). Rule 12(f) relief will only be granted if "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties" or if they "confuse the issues in the case." *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 421 (E.D. Pa. 2016) (quotation and citation omitted). The purpose of a Rule 12(f) motion is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

Defendants assert that certain allegations in the Complaint should be stricken because "care and treatment rendered to other patients is irrelevant to a medical professional liability suit." (ECF 6-2 at 15 (citing *Buckman v. Verazin*, 54 A.3d 956 (Pa. Super. Ct. 2012)).) The Estate references a series of citations for alleged failures to perform certain activities on dates ranging from February 26, 2020 to January 26, 2023, ostensibly to show Defendants "knew that they had been cited by [unspecified] governmental units regarding ProMedica." (ECF 1-3 at ¶ 95.) Defendants argue that the citations issued between June 16, 2022 and January 26, 2023 were issued after Anderson's residency at ProMedica and that the treatment provided on those dates "has nothing to do with the care [Anderson] received." (ECF 6-2 at 15-16.) They ask the Court to strike the references as impertinent because the Estate makes "no effort whatsoever to connect the survey results to [Anderson's] care and treatment or any issue in this case." (*Id.* at 16.)

The Estate responds that the results are neither scandalous nor impertinent, (ECF 14 at ECF p. 21.) It argues that "[i]f there was any doubt regarding the relevancy of [a Pennsylvania Department of Health] survey" in this context, "it was put to rest" when the Pennsylvania Superior Court held that surveys demonstrating "'the existence of across-the board substandard care'" were

relevant to show that the Defendants "'had knowledge of these deficiencies in patient care and blithely ignored them . . . .'" (ECF 14 at ECF p. 21-22 (quoting *Scampone v. Grane*, 169 A.3d at 618-19.)

Although references to citations issued for alleged deficiencies occurring after Anderson's death *could* have relevance to the Estate's claims, the Court agrees with Defendants that, as pled, they are impertinent, so they are stricken. Any reference to these citations in an Amended Complaint must be tethered to the specific circumstances surrounding Anderson's care.

## III.  CONCLUSION

The Court grants Defendants' Motion to the extent that it seeks to dismiss the Estate's claims against the Non-Operator Defendants, its claims based on vicarious liability, its punitive damages claims, and its vague allegations of fraud.[8] The Complaint's references to citations issued for alleged deficiencies occurring after Anderson's death are stricken. The Motion is denied in all other respects.

An Order consistent with this Memorandum will be docketed separately.

---

[8]  Removal has consequences. The Estate chose to respond to Defendant's Motion instead of amending its Complaint once as of course under Federal Rule of Civil Procedure 15(a)(1)(B) to conform to the requirements of *Twombly* and *Iqbal*. That means it now must return to the drawing board if it wants to proceed with its claims against the Non-Operator Defendants, its claims based on vicarious liability, and its claims for punitive damages.